BLANCHE, Judge.
Plaintiff, Herbert Thompson, instituted this suit to recover certain real estate commissions allegedly due him as a result of his employment by defendant, Richard D. Shaffett, who was doing business as Farms and Acreage Realty Company. He also sought to recover the interest on a promissory note payable to him. Defendant answered the suit, denying that he owed the commissions and interest and also filed a reconventional demand against plaintiff, alleging defamation.
The trial court rendered judgment in plaintiff’s favor in the sum of $3,375, representing the commission for listing property known as the “Knight Estate,” and dismissed plaintiff’s other demands as well as the reconventional demand.
Only the defendant has appealed, and his appeal is from the portion of the judgment awarding the $3,375 commission to plaintiff. We affirm.
The specifications of error urged by defendant on appeal are that the trial court erred in finding that plaintiff was the procuring cause of the listing of the “Knight Estate” and in granting an award for a listing commission based on 25 percent of 10 percent of the sales price of said property.
The issue in controversy is a factual one. It is not denied that plaintiff was employed as a real estate agent by the defendant, nor is there any serious controversy over the amount plaintiff was to be paid in the event he obtained either a listing or a sale. The evidence indicates that it is the usual procedure in the real estate business to obtain a signed listing agreement from the seller, in which event the broker would have the exclusive right to sell the property and in return for this service be paid a certain commission. The commission ranged generally between 6 percent for residential listings to 10 percent for farm or open acreage listings. The evidence also indicates that a real es *758 tate salesman employed by a broker is entitled to two commissions, one when he secures the listing and another when he sells the property that has been listed.
The trial court was convinced that plaintiff had a 25 percent commission arrangement with the defendant for property he listed and a 45 percent commission on any sales that he made. In this determination the trial court was correct. Plaintiff testified that he had actually been paid his commissions on this basis in his previous dealings with defendant, and this was admitted by the defendant. The defendant could not offer proof of having paid the plaintiff less, although he did show that he paid other salesmen on a 20 percent-40 percent basis. His only explanation for paying plaintiff 5 percent more was to avoid hearing the plaintiff “raise Cain.”
We are also of the opinion that the trial judge correctly resolved the issue as to whether the plaintiff was the procuring cause of the listing of the property belonging to the Knight Estate. The Knight property was farmland and in dealing with this type of property the testimony shows that a significant portion of such property was not listed by written agreement, but to the contrary, oral permission was given to sell the property for a certain price. In the event of such a sale there was an agreement that the real estate salesman would be paid an agreed commission. The usual commission for selling farmland was 10 percent.
The defendant admitted that on property purchased by him it was his custom to pay a listing commission to the salesman employed by him if that salesman listed the property. Plaintiff testified that he was a friend of Mr. Manuel Knight, one of the co-owners of the Knight Estate, and obtained his oral permission to sell the property in question for a certain price. If it were the custom of the defendant to pay such commissions on property ultimately purchased by him for his own use, the only remaining question is whether plaintiff did, in fact, obtain the listing.
The defendant testified that he learned the Knight property was for sale through one of his contacts in the area and called Mr. Knight on the telephone to determine if the property was, in fact, for sale. He also stated he mentioned to plaintiff that he was interested in buying the property but needed further information such as acreage and front footage on the road. It is his contention that because plaintiff was a personal friend of Mr. Knight that plaintiff volunteered to go to Mr. Knight and obtain this information but that no mention was made by plaintiff of an agreement between him and Mr. Knight.
The defendant persisted in stating that he had made such a call to Mr. Knight, despite being warned that his testimony would be impeached. Subsequently, Mr. Knight was called and denied receiving such a telephone call from the defendant until after he had given oral permission to the plaintiff to sell the property. He further testified that he did not know Mr. Shaffett presumably “until after” the time he gave plaintiff oral permission to sell the property.
The conclusion of the trial judge that plaintiff was the procuring cause of the oral permission to sell the Knight property before he was ever contacted by defendant concerning the purchase of the property is supported by the evidence, and he was justified in accepting the plaintiff’s testimony over that of the defendant’s.
“The responsibility to weigh carefully, judge cautiously, and evaluate thoroughly the testimony of witnesses bear[s] heavily on the shoulders of the trial judge and his determination of the credibility of witnesses and the reasonableness and truthfulness of their testimony should not be overturned except upon a showing of clear, positive, and manifest error, [Citations omitted]” Satter *759 white v. Zurich Insurance Company, 199 So.2d 429, 435 (La.App. 1st Cir. 1967).
For the above reasons, the judgment of the trial court is affirmed, at the cost of defendant-appellant.
Affirmed.